# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> LAM LY, TAM PHAM, UT LE, NHI LE, DIEP PHAM, ) <br> LUAN BUI, MINH BUI, LOC MAI ) <br> ) <br> Defendants. ) <br> ) | **CRIMINAL ACTION** <br> **NO. 13-CR-40031-TSH** |

## AMENDED FINDING AND ORDER ON DEFENDANTS' MOTIONS TO SUPPRESS

April 2, 2015

**HILLMAN, D.J.**

### Introduction

The Defendants are charged with running an illegal marijuana cultivation and sales operation. The evidence against them includes the fruits of warranted searches of eight residences and 15 motor vehicles. Seven of the defendants have moved to suppress from the introduction into evidence against them at trial, contraband and miscellaneous seized items from those searches. For the reasons set forth below, those motions are denied.

### Background

The aphorism that "one man's trash is another man's treasure" would certainly apply to the law enforcement officials who investigated this case. In March of 2013, workers at the Oxford Transfer Station apprised local police that large amounts of marijuana debris were being deposited at their facility. Defendants Lam Ly and Tam Pham were identified as the owners and drivers of several of the vehicles dumping the debris at the transfer station. The authorities

learned that Ly and several co-conspirators in this case were awaiting trial for being part of a marijuana distribution organization in the state of Washington. Their investigation also revealed that in December of 2012, law enforcement officials had found paperwork connecting Ly and Pham to a house in Connecticut where large amounts of marijuana had been grown. Part of that paperwork included a receipt from the Oxford Transfer Station. Significantly, that Connecticut grow house had a by-passed electrical meter.

The ensuing law enforcement investigation focused on the examination of the marijuana detritus that continued to be deposited at the Oxford Transfer Station, surveillance of the conspiracy members, including the use of GPS technology, and on data collected from the installation of electrical "check meters" installed at seven residential addresses suspected of being marijuana grow houses. The check meters were installed by National Grid and Paxton Municipal Light and Power to determine if electrical service to the residences was being illegally diverted.

Based upon the information obtained from these and other sources, DEA Special Agent Robert Olsen, using a single omnibus affidavit, applied for and received search warrants for eight residences and numerous motor vehicles. The searches pursuant to those warrants were conducted on September 25, 2013 by federal, state, and local law enforcement officials. Over 2,000 marijuana plants, more than $124,000 in cash, marijuana cultivation equipment, and equipment used to illegally circumvent electrical meters were discovered and seized.

Two defendants, Lam Ly and Tam Pham, have moved to suppress the results of all eight of the residential searches. Four other defendants have moved to suppress evidence seized at single locations. In addition to seeking to suppress the search of his residence, Defendant Diep Pham has moved to suppress statements that he made at his Webster home and later at the

2

Oxford police station. Finally, all Defendants but Luan Bui have moved to suppress the information received from the check meters.[1] Because some of the defendants have the same last name, and some are married, I have annexed to this opinion is a chart that sets forth which search(es) each defendant seeks to suppress. In addition, that chart sets forth the putative address of each defendant and any relationships with other co-defendants alleged by the government.

**The constitutionality of the installation of the check meters by National Grid**

In July of 2013, based upon their belief that the conspiracy was maintaining multiple grow houses, DEA Agent Olsen contacted National Grid and the Paxton Municipal Light and Power Light Company. Because indoor marijuana growing operations consume a great deal of energy, and because growers sometimes bypass electrical meters in order not to draw attention to themselves and to save money, Olsen asked National Grid and Paxton Municipal Light and Power to investigate whether electricity was being diverted at seven addresses: 56 and 17 Blueberry Hill, Webster MA, 17 Nutmeg Drive, Worcester, MA, 11 Oakwood Drive, Webster MA, 54 Parker Street, Worcester, MA, 5 Pinnacle Way, Douglas, MA and 451 West Street, Paxton, MA.[2] National Grid and Paxton Municipal Light and Power agreed to install a "check meter" at each of those premises which would allow them to measure the amount of electricity entering the house independently of what the residential meter showed. Comparisons of the readings from the meters confirmed that the commercial meter had been bypassed at each address.

---

[1] Only one Defendant, Minh Bui, has moved to suppress any evidence seized from a motor vehicle, namely a Toyota Camry referred to in the affidavit in support of the search warrants as Vehicle #9.

[2] The Paxton Municipal Light and Power Company installed the check meter at 451 West Street in Paxton. The property seized at that location is not the subject of any motion to suppress except for Ly and Pham's motion to suppress all evidence seized at all locations. Olsen only referred to check meter data for 56 and 17 Blueberry Hill, Webster MA, 11 Oakwood Drive, Webster MA, and 451 West Street, Paxton, MA in the affidavit he proffered as part of his application for a search warrant.

3

The defendants argue that the installation and monitoring of the check meters was a warrantless search by National Grid acting as a governmental agent onto the curtilage of their homes. The Government's position is that National Grid was not a governmental actor, that the collection of data via the check meter was not a search, and that the Defendants consented to the collection of the check meter data. Whether National Grid was acting as an agent of the government is dispositive of this issue.

### *Did National Grid act as an agent of the United States?*

The protections of the Fourth Amendment are "wholly inapplicable 'to a search or seizure, even an unreasonable one effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984) (*citing Walter v. U.S.*, 447 U.S. 649, 662 (1980)). The First Circuit has rejected a specific test for determining when a private actor crosses the line and becomes a government instrumentality as "likely to be oversimplified or too general to be of help" and suggests that factors used by other circuits "may be pertinent in different circumstances: the extent of the government's role in instigating or participating in the search, its intent and degree of control it exercises over the search and private party, and the extent to which the private party aims primarily to help the government or to serve its own interests." *U.S. v. Pervaz*, 118 F.3d 1, 6 (1st Cir. 1997). The defendants have the burden of establishing government involvement in a private search. *U.S. v. Snowadzki*, 723 F.2d 1427, 1429 (9th Cir. 1984), *cert. denied* 469 U.S. 839 (1984).

In his omnibus affidavit in support of the application for the warrants, it appears that SA Olsen brought all seven of the suspected grow house locations to the attention of the power companies at the same time. He uses the same language in support of the search of each of the

4

four grow house addresses mentioned in the affidavit. "In or around July 2013, I informed National Grid of my suspicion that (the subject premises) may be the site of an indoor marijuana grow operation and of my concern that the occupants of the property may be stealing electricity." It also appears that National Grid, acting on SA Olsen's information, installed the check meters at, or on, July 25th, 2013. Other than notifying National Grid of his suspicions, there is nothing in the affidavit identifying any other direction, conduct, or support given to National Grid by SA Olsen or any other law enforcement official.

Clearly, SA Olsen's goal was to obtain verification that the addresses in question were bypassing their electric meters in order to surreptitiously and cheaply supply heat to their grow houses. Since SA Olsen did not seek a warrant for National Grid's entry onto the addresses, he expected that National Grid had a "free pass" to conduct its investigation without the necessity of obtaining a warrant. National Grid has a clear and legitimate interest in preventing loss and the theft of its product. That law enforcement was clearly a beneficiary of the installation of the meters does not translate into National Grid becoming an agent of the state. Certainly that possibility exists, but on the record before me I do not see that National Grid has crossed the line. While the government's information caused National Grid to install the check meters, it did not participate, support, or direct the alleged search. It is clear from the affidavit that National Grid had an established protocol in place when apprised of the potential theft of electricity. Further, it is reasonable, and not unusual that such a tip would come from the police who are often in a position to suspect such activity. I find that the installation of the check meters was done by National Grid in their private capacity and not as an agent of the police. Therefore, any information in the affidavit relative to the check meters will be considered in determining whether there was probable cause for the issuance of the warrants.

## Lam Ly and Tam Pham

Ly and Pham are married and lived at 204 Auburn Street, in Leicester MA., which was one of the searched addresses. They have both moved to suppress the fruits of all eight of the search warrants. Ly's motion to suppress cites as grounds for suppression that the affidavit in support of the search warrants fails to establish probable cause to search, is based upon stale information, and fails to state with particularity the places to be searched. There is no argument in support of these bare bones allegations. Pham has moved to suppress by joining in Ly's motion and that of another co-defendant, Nhi Le. While Ly's motion to suppress cites probable cause deficiencies as the basis for its filing, its main thrust is to challenge the probable cause derived from the placements of the check meters on the properties. Since there are serious questions of Ly and Pham's standing to contest all of the searches, I will begin with that issue.

### *Ly and Pham's standing[3] to contest the eight searches*

Suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have no special standing. *See Alderman v. U.S.*, 394 U.S. 165, 172 (1969). As a threshold to bringing their motions to suppress, Ly and Pham have the burden of establishing that they had a legitimate expectation of privacy in the places to be searched. *U.S. v. Rheault*, 563 F.3d 55, 59 (1st Cir. 2009). The determination of whether one has a legitimate expectation of privacy embraces two discrete questions: (1) whether the individual, by his conduct, has established an expectation of

---

[3] "This inquiry is often referred to as a 'standing' issue, although it is not an inquiry that serves the function of traditional standing doctrine, which is to enable a federal court to determine whether there is such case or controversy that it may take jurisdiction of under Article III." *U.S. v. Cruz Jiménez*, 894 F.2d 1, 5 n.1 (1st Cir. 1990) (citations omitted). The concept of standing under the Fourth Amendment refers to the defendant's burden of proving a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct. *United States v. Sánchez*, 943 F.2d 110, 113 n.1 (1st Cir.1991). "We therefore use the term 'standing' somewhat imprecisely to refer to this threshold substantive determination." *Id. See U.S. v. Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994).

privacy; and (2) whether his subjective expectation of privacy is one that society is prepared to recognize as reasonable. *See Smith v. Maryland*, 442 U.S. 735, 740 (1967).

In addition to their residence at 204 Auburn Street, Pham is the alleged lessor of 11 Oakwood Drive in Webster. Oakwood Drive is the residence of co-defendants Nhi Le and Diep Pham and was an active grow house. Pham and Ly are the lessors of 5 Pinnacle Way and Ly was arrested at that address when the search warrant was executed. The government concedes that Ly and Pham have standing to contest the Auburn Street and Pinnacle Way searches. They do not agree that they have an expectation of privacy in the remaining six addresses. A defendant who fails to demonstrate a sufficiently close connection to the relevant places or objects will not have standing to claim that they were illegally searched or seized. *See U.S. v. Sánchez*, 943 F.2d 110, 113 (1st Cir. 1991).

Both Ly and Pham have filed affidavits in support of their respective motions to suppress, however only Pham's affidavit addresses expectation of privacy issues, and that is by way of referring to count 3 of the indictment which alleges that she "did knowingly lease, rent and maintain . . . for the purposes of manufacturing marijuana" the premises at 5 Pinnacle Way and 11 Oakwood Drive, in Webster. Since Ly and Pham have set forth no argument in their brief, nor filed an affidavit to establish factual underpinning that would give them the requisite expectation of privacy to challenge any of the searches save for Auburn Street and Pinnacle Way, I find that they have not satisfied their burden of establishing that either had a reasonable expectation of privacy in the other six addresses.

With respect to Tam Pham and her assertion of the right to seek suppression of the fruits of the 11 Oakwood Drive search, she relies on the language of the indictment cited above, and nothing more. Both the Government and the Defendants Nhi Le and Diep Pham agree that Nhi

Le and Diep Pham resided at this address. Accordingly, I find that the she has not demonstrated a reasonable expectation of privacy as to 11 Oakwood Drive.

*Ly and Pham – 204 Auburn Street, Leicester, MA and 5 Pinnacle Way, Douglas, MA*

Neither defendant has offered any argument that would support the suppression of any of the evidence seized at these addresses. Pham did not file her own motion to suppress but instead asks by motion (#16) to join in the motions to suppress filed on behalf of Lam Ly and Nhi Le. Neither Ly, nor Pham make any argument regarding the probable cause to search either of these addresses and instead focus their arguments on the legality of the installation of the check meters. Nhi Le's argument centers around 11 Oakwood Drive and likewise addresses the legality of the check meters. The defendants bear the burden of showing by a preponderance of the evidence that warranted search was unlawful. *See U.S. v. Franco*, 11-cr-10228-DJC, 2012 WL 2847861, *2 (D. Mass. July 10, 2012). Since there is no argument specific to searches of Auburn Street and Pinnacle Way other than the check meter installation at Pinnacle Way discussed above, I deny Ly and Pham's motion to suppress.

Parenthetically, even though neither defendant argues the sufficiency of the probable cause at these two addresses, there was more than ample probable cause for the searches of Auburn Street and Pinnacle Way. Ly had been previously convicted for growing marijuana. He had been identified by transfer station employees on numerous occasions dumping marijuana debris. He had been tracked via GPS from Pinnacle Way to the transfer station before dumping marijuana and he had hosted a meeting of the co-conspirators at his home on Auburn Street.

## Nhi Le and Diep Pham

*11 Oakwood Drive, Webster, Massachusetts*

Nhi Le argues forcefully that National Grid acted as a governmental agent and that their warrantless installation of the check meter at 11 Oakwood Drive breached their constitutionally protected curtilege. Diep Pham has also moved to suppress the search of 11 Oakwood Drive by joining in Le's motion. Since I have found that National Grid was not acting as a governmental agent, the probable cause determination will include the check meter information obtained from National Grid.

Early in the investigation, authorities began taking note of which vehicles visited Lam Ly and Tam Pham's residence at 204 Auburn Street and, per the GPS devise installed on Ly's car, the locations that Ly visited regularly. The GPS data revealed that Ly had been "at or near" 11 Oakwood Drive in Webster, Massachusetts for short periods of time on 7 occasions during the period between May and September 2013. On May 16, 2013, Agent Olsen observed Ly and Pham driving in Ly's car "off of Oakwood Drive onto Kingsbury Road . . ." In addition Nhi Le's motor vehicle was observed at a suspected meeting of the co-conspirators on June 12, 2013 at the Auburn Street address. The addressed assigned to the registration of Le's vehicle is 11 Oakwood Drive. Per National Grid Nhi Le is the subscriber for electrical services at that address.

On July 25, 2013 National Grid installed a check meter on a telephone pole located on the property about 10 feet from the road and about 30 feet from the residence. Readings from the check meter taken in August confirmed that the commercial meter had been bypassed and a significant amount of electricity diverted. National Grid estimated that over $11,000.00 in electricity had been stolen during the period from February of 2012 through July of 2013. Based upon the above, I find that it is reasonable to believe that 11 Oakwood Drive was being used as grow house at the time that the warrant issued and that there was probable cause for its issuance.

## Minh Bui and Luan Bui

*17 Blueberry Hill, Webster, MA and 17 Nutmeg Drive, Worcester MA*

Because defendants Minh Bui and Luan Bui are brothers and because the two addresses are connected by other common threads, I will address the factual underpinnings relevant to each.

*17 Blueberry Hill, Webster, MA*

The affidavit recites that an unknown Asian male visited an indoor gardening supply store three times between late 2011 and early 2012. On each occasion that person was driving a car registered to Minh Bui's wife Dung Nguyen. In November of 2011, the address assigned to that registration was 17 Nutmeg Drive, Worcester, MA. In December of 2011 when the vehicle was again seen at the grow store, the registration reflected that Nguyen's address had been changed to 17 Blueberry Hill. During this same time frame that Dung Nguyen's vehicle was seen at the grow store, the theft of electricity was taking place at 17 Blueberry Hill and the subscriber for the electrical services was Minh Bui. According to Agent Olsen's affidavit, the address on Minh Bui's driver's license is 17 Nutmeg Drive in Worcester. Also according to the affidavit, Minh Bui and Dung Nguyen purchased 17 Blueberry Hill Road as husband and wife in October of 2011. In April of 2013, a search of trash bags containing marijuana debris revealed WIC stubs for Dung Nguyen. The vehicle that delivered the debris was registered to co-conspirator Luan Bui who lives at 17 Nutmeg, Drive in Worcester.

In August of 2013 Olsen avers that he observed Nguyen's vehicle with Bui, children, and groceries arrive at 17 Blueberry Hill. At that time, another vehicle registered to Nguyen and a vehicle registered to Luan Bui were in the driveway. Olsen opines in his affidavit that he finds "it unusual that, in a house that size, on every occasion I viewed the house, every front shade was

10

drawn. This includes observations I made of the residence back in late 2011 and early 2012 when Dung Nguyen's vehicle had been observed" at the grow store.

## *17 Nutmeg Drive, Worcester, MA*

In support of that application, Agent Olsen recited that Luan Bui owns and resides at the address and his car is registered to this address. His brother and co-defendant, Minh Bui, also used 17 Nutmeg Drive as the address for his driver's license even though he lived at 17 Blueberry Hill in Webster. He also used the Nutmeg Drive address for several vehicle registrations. On one occasion, Luan Bui's vehicle was seen at 54 Parker Street, which is the residence of Loc Mai, one of the co-defendants. GPS monitoring of co-defendant, Lam Ly's vehicle placed it in the vicinity of 17 Nutmeg Drive. On another occasion mentioned above, Dung Nguyen's vehicle was seen at an indoor plant growing supply store. The registration address of that vehicle was 17 Nutmeg Drive. On two occasions in April of 2013, Luan Bui's van deposited marijuana debris at the Oxford Transfer Station. On the first of those occasions, over 500 pounds of debris was deposited and on the second, over 400 pounds. Included in the second deposit was a 2010 phone bill addressed to Luan Bui at 17 Nutmeg Drive and a receipt indicating that 940 pounds of trash had been deposited at the transfer station in November of 2010.

Minh Bui argues that the affidavit in support of the search warrant for 17 Blueberry Hill was based upon stale information, contained check meter data that was illegally obtained, and there was no probable cause for the issuance of the warrant. Regarding staleness, he argues that eighteen month old observations of multiple trips by an Asian male to an indoor grow supply store using a vehicle registered to Minh Bui's spouse, are "stale" and should not be considered in assessing probable cause. "[A]n affidavit supporting a search warrant must contain timely

information or else it will fail." *U.S. v. Schaefer*, 87 F.3d 562, 568 (1st Cir. 1996). Nonetheless, the First Circuit has declined to adopt an approach that is premised solely upon "counting the number of days that have elapsed." *U.S. v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008). *See also Schaefer*, 87 F.3d at 568 (same). "Rather, a number of integers must be factored into the calculus–e.g., the nature of the information, the nature and characteristics of the supposed criminal activity, the nature and characteristics of the place to be searched, the nature of the items delineated in the warrant–and the likely endurance of the information must be gauged on that basis. The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation." *Schaefer*, 87 F.3d at 568 (internal citations omitted).

The very nature of marijuana cultivation conspiracies suggests, under some circumstances, that several year old information may not be stale. What's more, the facts of the warrant affidavit give every reason to believe that such an extensive and long term conspiracy was present. The affidavit set forth evidence to demonstrate that this conspiracy had been ongoing for more than a year. In *Schaefer*, the First Circuit recognized that the equipment used to cultivate marijuana is "likely to be in service for several years." 87 F.3d at 568. Here, as in Schaefer, the affidavit described criminal activity that was both long term and required items of "enduring worth and utility" (special lights and wiring, venting systems, and rooms outfitted for the different stages of the cultivation cycle). *See Schaefer*, 87 F.3d at 568; Olsen Aff., 206, 229. Significantly, *Schaefer* observed that where, as here, a defendant's own property is used instead

of "a rented or appropriated facility that could easily be used and then abandoned," the "staleness calculus" is influenced because there is a suggestion of permanence. 87 F.3d at 568.[4] Finally, and most persuasively, the warrant affidavit specifically linked Minh Bui's past grow-supply trips to his alleged current criminal activity. *Id.* ("When an affidavit tendered in support of a warrant application contains information that is remote in time, a magistrate may still hold it to be adequate if it also contains sufficient recent facts corroborating the older data and linking that data to the present."). *See also United States v. Floyd*, 740 F.3d 22, 34 (1st Cir. 2014) ("[O]therwise stale facts can be revivified and made relevant for search warrant purposes by more recent confirmation."). The affidavit related ongoing disposal of marijuana debris at the OTS as of mid-August 2013, tied Minh Bui to the disposal of marijuana debris at the OTS in April 2013, and reflected simultaneous electricity theft in his home (which the agent explained was indicative of the presence of a marijuana growing operation).[5]

Luan Bui argues that the information regarding the 2013 disposals of marijuana rubbish was stale, and that the warrant application failed to establish probable cause because there was no nexus between the alleged criminal activity and his house at 17 Nutmeg Drive. The "nexus" element of a probable cause inquiry requires a search warrant application to provide a basis to believe that: "1) a crime has been committed, and 2) enumerated evidence of the offense will be found at the place to be searched." *U.S. v. Hicks*, 575 F.3d 130, 136 (1st Cir. 2009). "Probable cause to issue a search warrant exists when given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular

---

[4] Other courts of appeals also agree that marijuana cultivation conspiracies are long term. *See Schaefer*, 87 F.3d at 568 (citing *U.S. v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993) (21 month old information not stale); *U.S. v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2003) (5 months); *U.S. v. Myers*, 106 F.3d 936, 938 (10th Cir. 1997) (5 months); *U.S. v. Greany*, 929 F2d 523, 525 (9th Cir. 1991) (two year old information not stale)).

[5] Minh Bui suggests that the court rely upon *U.S. v. Kosta*, No. 12-CR-10226-DJC, 2013 WL 5934030 (D. Mass. Oct. 31, 2013) to find that the information about the grow store visits was stale. In *Kosta*, "the affidavit] include[d] no information contemporaneous with the warrant application." Id. at *5. That is not the case here.

place." *U.S. v. McMullin*, 568 F.3d 1, 6 (1st Cir. 2009). The court must "examine the affidavit in a practical, common-sense fashion and accord deference to reasonable inferences the [magistrate] may have drawn from the attested facts." *U.S. v. Greenberg*, 410 F.3d 63, 66-67 (1st Cir. 2002). "In a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause." *Id.* at 67.

The affidavit links the vehicle used to dispose of over nine hundred pounds of marijuana debris in April 2013 to Luan Bui and his home address at 17 Nutmeg Drive. It also links Luan Bui and his home address at 17 Nutmeg Drive to numerous other members of the alleged conspiracy to grow and distribute marijuana. Finally, it links the April 2013 disposals to continuing disposals at the OTS by the conspiracy.

I find that relevant earlier data were properly considered in the probable cause assessments for both 17 Blueberry Hill and 17 Nutmeg Drive because the defendants' own vehicles and homes were involved, the data implicated long-term activity, and the data were specifically linked to ongoing activity by the defendants and the alleged conspiracy. Based on all of the relevant information in the affidavit, I further find that common sense suggests a fair probability that evidence of a marijuana growing and distribution conspiracy would be found at both addresses. Finally, since I have found that National Grid was not acting as a governmental agent, the probable cause determination will also include the check meter information obtained from National Grid. Based upon the totality of the above circumstances, I find that there was probable cause for the issuance of the search warrant for both 17 Blueberry Hill and 17 Nutmeg Drive.

14

## Ut Le

### *56 Blueberry Hill, Webster, MA*

On May 20, 2013 a U-Haul truck rented by Ut Le of 56 Blueberry Hill in Webster, MA disposed of more than two thousand pounds of marijuana detritus. Three days later, agents observed a car registered to Ut Le at 56 Blueberry Hill making multiple trips to the OTS, where the driver discarded several hundred pounds of marijuana detritus. Agents later observed that same car parking in the garage of 56 Blueberry Hill. The following month, agents followed that car to a gardening store specializing in indoor-gardening supplies. On August 5, 2013 OTS employees reported that the same car had been used to dispose of more than nine hundred pounds of additional marijuana rubbish. A week later, Ut Le registered a van to himself at his 56 Blueberry Hill address. That van was then used over the following week to dispose of more than two thousand additional pounds of marijuana debris. The signatures appeared to match on all of the receipts for the above disposals, totaling more than two and a half tons of marijuana waste. The United States Postal Service confirmed that Ut Le receives mail at 56 Blueberry Hill. Ut Le seeks to suppress evidence seized from his home at 56 Blueberry Hill, arguing that the check meter data was improperly obtained. However, the above facts alone suffice to reasonably infer a fair probability that contraband or evidence of a marijuana growing operation would be found at 56 Blueberry Hill. Thus, there would have been probable cause to issue a search warrant even without the check meter information. That said, I have found that National Grid did not act as a government agent, and that information from the check meters was properly used in determining probable cause. Ut Le's motion is therefore denied.

## Conclusion

For the reasons set forth above, the Defendants' motions to suppress are ***denied***.

**SO ORDERED.**

>  */s/ Timothy S. Hillman*
> TIMOTHY S. HILLMAN
> DISTRICT JUDGE

| Defendant (M/F) | Relationship(s) | Evidence pending Suppression | Origin Address/Vehicle (of Evidence) | Additional Information |
|---|---|---|---|---|
| Lam Hoang **LY** (M) | • Married to/In relationship with Tam **PHAM**<br>• Residence: 204 Auburn St., Leicester MA<br>• Arrested: 5 Pinnacle Way, Douglas MA (GH) | • All evidence seized as result of search warrant [Doc. 138]<br>• Data acquired from "check meter(s)" [Doc. 138] | • 56 Blueberry Hill, Webster MA (meter)<br>• 451 West St., Paxton MA (meter)<br>• 11 Oakwood Dr., Webster MA (meter & curtilage)<br>• 17 Blueberry Hill, Webster MA (meter)<br>• 54 Parker St., Worcester MA (fruit)<br>• 17 Nutmeg Dr., Worcester MA (fruit)<br>• 5 Pinnacle Way, Douglas MA (fruit)<br>• 204 Auburn St., Leicester MA (fruit) | • Standing issue for all properties other than Residence and place of Arrest.<br>• National Grid/Paxton MLD employee was the *sine qua non* of the investigation.<br>• Curtilage<br>• Seems to be arguing 4-corners doctrine, but does not expressly say so. |
| Tam **PHAM** (F) | • Married to/In relationship with Lam **LY**<br>• Residence: 204 Auburn St., Leicester MA<br>• Lessor: 11 Oakwood Dr., Webster MA & 5 Pinnacle Way, Douglas MA | • All evidence seized as result of search warrant<br>• Data acquired from "check meter(s)" | • Same as **LY** (all 8 properties) | • Standing issue for all properties other than Residence and possibly where listed as Lessor (11 Oakwood and 5 Pinnacle)<br>• Joined Lam **LY**'s M/S (Doc. 138) and Nhi **LE**'s M/S (Doc. 130) [Doc. 164] |

1

| | | | | |
|---|---|---|---|---|
| Ut **LE** (M) | • Residence: 56 Blueberry Hill, Webster MA | • All evidence seized as result of search warrant [Doc. 148]<br>• Data acquired from "check meter" [Doc. 148]<br>• SA Olsen's application for warrant would've been insufficient without data from "check meter." | • 56 Blueberry Hill, Webster MA | • National Grid employee(s) acted in concert with, and at the request of government agents.<br>• Seems to be arguing 4-corners doctrine, but does not expressly say so. |
| Nhi **LE** (F) | • Lives at 11 Oakwood Dr. with Diep **PHAM** | • Electrical data collected from "check meter," which was "sole and primary means" of obtaining search warrant. [Doc. 130]<br>• All evidence stemming from warrant. [Doc. 130] | • 11 Oakwood Dr., Webster MA [Doc. 130] | • National Grid employee was the *sine qua non* of the investigation. [Doc. 130]<br>• Curtilage [Doc. 130] |
| Diep **PHAM** (M) | • Not mentioned in SA Olsen's affidavit.<br>• Lives at 11 Oakwood Dr. with Nhi **LE** | • Statements to law enforcement [Doc. 152]<br>• Electrical data collected from "check meter," which was "sole and primary means" of obtaining search warrant. [Doc. 130]<br>• All evidence stemming from warrant. [Doc. 130] | • 11 Oakwood Dr., Webster MA (statements and evidence) [Docs. 152 and 130]<br>• Oxford (or Webster) Police Station (statements) [Doc. 152] | • Joined Nhi **LE**'s M/S - Doc. 130. [Doc. 155]<br>• National Grid employee was the *sine qua non* of the investigation. [Doc. 130]<br>• Curtilage [Doc. 130]<br>• Involuntary custodial interrogation. [Doc. 152] |

2

| | | | | |
|---|---|---|---|---|
| Luan **BUI** (M) | • Brother of Minh **BUI**.<br>• Residence: 17 Nutmeg Dr., Worcester MA | • All evidence as result of search warrant [Doc. 136] | • 17 Nutmeg Dr., Worcester MA [Doc. 136] | • SA Olsen's Affidavit fails to establish PC in regards to particular address. [Doc. 137]<br>• Not suspected grow house, but a residence. |
| Minh **BUI** (M) | • Brother of Luan **BUI**.<br>• Married to Dung Nguyen (non-party, vehicle owner)<br>• Residence: 17 Blueberry Hill, Webster MA | • All evidence obtained [Doc. 146]<br>• Data acquired from "Check meter" [Doc. 147] | • 17 Blueberry Hill, Webster MA [Doc. 146]<br>• Toyota Camry - Vehicle #9 [Doc. 146/7] | • 4-Corners Doctrine [Doc. 147]<br>• National Grid employee = Government agent [Doc. 147]<br>• Info in warrant concerning Vehicle #9 "is stale." [Doc. 147] |
| Loc **MAI** (M) | • Residence: 54 Parker St., Worcester MA<br>• Arrested: 5 Pinnacle Way, Douglas MA | • All evidence obtained [Doc. 144]<br>*-MOTION WITHDRAWN* [Doc. 205] | • 32 Shadowland Dr., Leominster MA (address not in SA Olsen's Affidavit) [Doc. 144]<br>• *Withdrawn* [Doc. 205] | • Moved to join M/S of co-defendants [Doc. 153]<br>*-DENIED* [Doc. 158] |

3